IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CONTRACTORS MATERIAL, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HALQUIST STONE COMPANY, ) <br> INC., ) <br> ) <br> Defendant. ) | Case No. 17 C 3931 <br><br> Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Contractors Material, Inc. ("CMI") filed a two-count complaint alleging breach of contract against defendant Halquist Stone Company, Inc. ("Halquist"). Halquist moves to dismiss [14] the complaint for forum non conveniens and, alternatively, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

**Background**

The following facts from the complaint are accepted as true for purposes of ruling on the motion to dismiss. CMI originally filed the case in the Circuit Court of Cook County, Law Division. Halquist removed the case to federal court and filed the motion now under consideration. According to the complaint, CMI is an Illinois corporation that supplies building materials and represents other material suppliers to provide material for construction projects. Halquist is a Wisconsin corporation that quarries, fabricates, and supplies stone for use as building materials.

Sometime prior to 2011, Halquist contacted CMI at its office in Palatine, Illinois, to negotiate with CMI about supplying Halquist stone to CMI's customers. Around the same time, CMI began tracking a job for a large construction project in Hinsdale, Illinois. The project involved the construction of several townhomes and condominiums in a subdivision called Hamptons of Hinsdale. In April 2011, CMI proposed to the general contractor on the Hamptons of Hinsdale

1

project that it use stone from Halquist. The contractor agreed.

Traditionally, invoicing and paying contractors for construction projects ("Traditional Method") is a flow chart whereby material suppliers invoice supply house contractors, like CMI, who invoice the subcontractors, who invoice the general contractor, who invoices the owner. Each contractor builds in a profit for itself in the invoice. Payments are then made in the reverse order of invoicing. The owner pays the general contractor, who pays the subcontractor, who pays the supply house, who pays the material supplier. On large construction projects payments are usually paid from escrow accounts set up by title insurance companies acting as intermediaries for investor-owners, and/or lenders. The use of escrow accounts adds some steps to the invoicing and payment process so there can be delays.

Count I of the complaint alleges that Halquist and CMI entered an oral agreement in April 2011 in which CMI agreed to buy and Halquist agreed to deliver rustic full veneer stone at the price of $228.00/ton, thinstone flats at $6.75 or $7.25/square foot, and thinstone corners at $9.40/linear foot. CMI would then deliver the stone to the Hamptons of Hinsdale project. Halquist and CMI allegedly agreed to the traditional payment method and CMI warned Halquist that there could be delays in payment of 60 to 90 days. CMI alleges that Halquist agreed to the terms of payment.

The complaint further alleges that Halquist began assessing finance charges on payments over 60 days and used credit "people" to harass CMI, including calling CMI daily for money. Halquist was also allegedly refusing to deliver stone for other projects unless CMI paid Halquist on the Hamptons of Hinsdale project. The complaint alleges that Halquist sought to increase its control and profits on the project and cut CMI out of the deal.

Count II of the complaint alleges that during work on the third building of the Hamptons of Hinsdale project in October 2013, Halquist proposed to CMI that invoices and payments for the project be handled by direct delivery, meaning Halquist delivers the stone to the mason, who then

2

invoices the general contractor. Halquist proposed continuing to use CMI trucks and equipment for delivery, paying CMI for the cost of delivery plus a commission, instead of CMI sharing in the profits through the supply chain. The parties entered an oral agreement in October 2013 for Halquist to deliver to the mason on the Hamptons project and Halquist would pay CMI a commission of the difference in price between what Halquist charged CMI for the stone and what CMI charged the mason for the stone for the first two buildings minus Halquist's freight costs. The project proceeded, but payments were not faster. CMI contends that Halquist refused to pay some of the commissions owed to it and otherwise lost profits as a result of Halquist's breach each of the oral agreements.

**Legal Standard**

When a defendant moves to dismiss for *forum non conveniens* based on a forum selection clause, the Court applies Rule 12(b)(3) analysis and it is the plaintiff's burden to establish that venue is proper. *See Faur v. Sirius Int'l Ins. Corp.*, 391 F. Supp. 2d 650, 657 (N.D. Ill. 2005); *see also Robrinzine v. Big Lots Stores, Inc.*, No. 15-CV-7239, 2016 WL 3459733, at *4 (N.D. Ill. June 24, 2016). "Under Rule 12(b)(3), which allows for dismissal for improper venue, the district court assumes the truth of the allegations in the plaintiff's complaint, *unless* contradicted by the defendant's affidavits." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the Court accepts as true all well pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive dismissal, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007).

**Discussion**

Halquist moves to dismiss the complaint based on *forum non conveniens* due to a forum selection clause in the parties' written agreement. Alternatively, Halquist moves to dismiss for failure to state a claim of breach of an oral agreement. The Court will first address the issue of forum.

Halquist attached to its motion an affidavit of Wade T. Balson, the Chief Financial Officer and Comptroller of Halquist. Dkt. 14-6, Ex. F. Attached to Mr. Balson's affidavit is a scanned copy of a February 15, 2010, agreement signed by CMI's President and Vice President, and a form contract that Halquist uses that contain two forum selection clauses. *Id.*

A forum selection clause is "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Faur*, 391 F. Supp. 2d at 657 (citing *Bonny v. The Soc'y of Lloyd's*, 3 F.3d 156, 159 (7th Cir. 1993)). The Supreme Court has enumerated four situations when a forum selection clause will be unenforceable: (1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy. *See Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993) (citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 591, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 (1991), and *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12–18, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).

There are two forum selection clauses in the agreement that Halquist attached to its motion. The agreement defines CMI as "Customer" and Halquist as "Creditor." The first broadly covers all dealings between the parties:

> Customer agrees that any dealings between the parties shall be governed by the laws of the State of Wisconsin, and Customer further agrees per Creditor's option to the jurisdiction of the courts of Waukesha County, state or federal, to determine any controversy arising in their dealings.

4

Dkt. 14-6, Ex. 1 to Balson Affidavit, February 2010 Contract, p. 1. The second is narrower in scope:

> Customer agrees to jurisdiction, and venue, at the Circuit Court of Waukesha County, Wisconsin, at the option of Halquist Stone, for any action to collect any delinquent balance due.

Dkt. 14-6, Ex. 1 to Balson Affidavit, February 2010 Contract, p. 3. CMI makes several arguments opposing enforcement of the forum selection clauses. First, CMI asserts that the clauses conflict and, if reconciled, take the complaint at issue here outside the scope of the clauses. This Court finds that the clauses do not conflict rather the first broadly provides for all disputes to be within the jurisdiction of the courts of Waukesha County, and the second specifically places jurisdiction for actions to collect delinquent balances in the Circuit Court of Waukesha County. The cause of action at issue here is not for collection of delinquent balances and, thus, jurisdiction is not specifically vested in the Circuit Court of Waukesha County. The issues in the complaint are controversies arising from the parties' dealings and, thus, jurisdiction is vested in the courts of Waukesha County at the election of Halquist.

Next, CMI argues that the clause is not enforceable because it does not make venue exclusive. CMI cites to *Muzumdar v. Wellness Int'l Network, Ltd.,* 438 F.3d 759, 762 (7th Cir. 2006), and *Paper Express Ltd. v. Pfankuch Maschinen GmbH,* 972 F.2d 753, 757 (7th Cir. 1992), to support this proposition. Neither case contains a similar provision to the ones at issue here. The court in *Muzumdar* found a provision that stated "SHALL BE PROPER ONLY" or "SHALL BE PROPER" in Dallas County, Texas, was sufficiently mandatory to make venue exclusive in Dallas County, Texas. *Muzumdar*, 438 F.3d at 762. In *Paper Express,* the court found the phrase "shall be filed," coupled with the phrase "all disputes," sufficiently manifested intent to exclusivity. *Paper Express, Ltd.*, 972 F.2d at 756. "The law is clear: where venue is specified with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue

5

exclusive." *Id.* at 757. The clauses at issue here, however, provide for jurisdiction in Wisconsin, state or federal at Halquist's election, and further refer in all instances to Waukesha County as the venue. Additionally, the first clause states "all disputes shall…". This is language indicates the parties' intent to make venue in the courts of Waukesha County, state or federal, exclusive.

Compare the clauses at issue here with *Freitsch v. Refco, Inc.*, where the Seventh Circuit Court of Appeals enforced the following provision: "place of jurisdiction ... is the registered office of the trustee [in Germany], to the extent permissible under the law." 56 F.3d 825, 827 (7th Cir. 1995). Moreover, in *Stifel, Nicolaus & Co. v. Lac du Flambeau Band of Lake Superior Chippewa Indians,* the district court found that, "Neither *Muzumdar* nor *Paper Express* directs this court to ignore those contractual provisions [placing venue in 'Western District of Wisconsin, or failing that in state court,'] simply because the clause makes jurisdiction here permissible, rather than mandating a single court to the exclusion of *all others,* and defendants cite no cases suggesting that this is unenforceable." 980 F. Supp. 2d 1078, 1089 (W.D. Wis. 2013). This Court therefore finds that the forum selection clause is not unenforceable on that basis.

CMI further argues that the February 2010 contract is unenforceable because it never signed the agreement. CMI contends that because its officers, Gred Stys and Andy Stys, signed the agreement it was in their personal capacity and not as officers of CMI. However, an agent of a disclosed principal is generally not personally bound, but binds only the corporation unless he agrees to be personally liable. *See, e.g., Knightsbridge Realty Partners, Ltd.-75 v. Pace*, 101 Ill. App. 3d 49, 53, 27 N.E.2d 815 (1st Dist. 1981) (finding dismissal was improper where the defendant signed his name, followed by the word President, and a provision in the agreement stated that the defendant shall execute a personal degree at closing, and thus a question remained about the defendant's intent to be bound by the purchase agreement).

Here, the February 2010 agreement defines CMI as "Creditor," Greg Stys as "Owner," and

6

"Vice President," and Andy Stys as "President." The second page operates as a personal guarantee, which both Greg Stys and Andy Stys signed. The signature block states that "All Partners or Officers Of Customer Should Sign And Be Personally Bound." The third page, titled Terms and Conditions is signed by Greg Stys and contains a provision providing that,

In the event of any changes in the ownership of the Customer or the Customer's business, the Customer, and personal guarantor(s), if any, shall be jointly and severally liable with any successors for all sales to such successors that originate and are charged to the Customer's account before Halquist Stone receives notice of such change in ownership in the manner set forth below; the terms of this credit account, and personal or guaranty if any, apply to Customer and to any successor in interest (corporate or non-corporate) to Customer's business.

Thus, the intent is clear from the agreement read as a whole that CMI is bound as Customer by the signatures of its officers *and* those officers, Greg and Andy Stys, are jointly and severally liable as personal guarantors. Thus, this Court finds that CMI has not established that enforcement of the February 2010 agreement with its forum selection clause is unreasonable. This Court further finds that CMI has not demonstrated any of the scenarios set forth by the Supreme Court to overcome the presumption that a forum selection clause is enforceable.

**Conclusion**

Because this Court finds that the parties agreed to a Waukesha County, Wisconsin, forum by execution of the February 2010 agreement, this Court grants Halquist's motion to dismiss. Having found that this Court is not the appropriate forum, this Court need not consider the sufficiency of the complaint under Federal Rule of Civil Procedure 12(b)(6). The complaint is dismissed without prejudice for re-filing in the appropriate forum.

IT IS SO ORDERED.

        ENTERED:

Dated:  August 24, 2017

                                      SHARON JOHNSON COLEMAN
                                      United States District Judge